**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **HARBOR PIPE & STEEL, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 23 C 2085** |
| | ) | |
| **MAZAK OPTONICS CORP.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>ORDER ON MOTION TO DISMISS AMENDED COMPLAINT</u>

Mazak Optonics Corp. has moved to dismiss the amended complaint of Harbor Pipe & Steel, Inc. for failure to state a claim. In considering the motion, the Court reads the complaint liberally and takes Harbor Pipe's factual allegations as true. The Court considers not just the complaint itself but also the attachments, in this case the document alleged to be the parties' contract.

Harbor Pipe operates a steel processing and distribution business. In 2019, it searched for an "industrial cutting laser" for use in its processes and communicated with Mazak, which makes and sells such equipment. Harbor Pipe says it expressed interest in purchasing an 8-kilowatt laser but that Mazak's personnel represented that its newly introduced 10-kilowatt laser would significantly outperform the other model and would otherwise be more suitable for Harbor Pipe's use.

In April 2019, Harbor Pipe entered into contracts with Mazak to purchase an Optiplex 4020 III 10000W Fiber model laser and other related components. The total price exceeded $1 million, including the cost of installation by Mazak. Harbor Pipe says it "was induced to enter into these contracts and purchase this expensive, top of the

line, allegedly cutting-edge Laser system by MAZAK's representations that this Laser would be able to meet certain specific performance metrics which justified the high price of the machinery and software." Am. Compl. ¶ 4.[1] Harbor Pipe alleges, however, that these representations were false and that Mazak knew or had reason to know this. After the contract was concluded, Harbor Pipe says, there were delays; Mazak made installation errors that made the laser temporarily inoperable; Mazak "admitted that they had provided inaccurate cutting charts" showing the speed the laser would cut through various materials; it performed poor maintenance; and "MAZAK was never able to make the machine perform in the ways that matched its precontractual representations." *Id.* ¶ 8. Harbor Pipe alleges that it suffered losses as a result.

In its amended complaint, Harbor Pipe asserts claims for fraud in the inducement (Count 1); negligent misrepresentation (Count 2); breach of implied warranty of fitness (Count 3); and breach of implied warranty of merchantability (Count 4). Mazak has moved to dismiss all four claims for failure to state a claim upon which relief may be granted and has also moved to strike Harbor Pipe's jury demand.

## 1. Count 1 – fraud in the inducement

A claim of fraud in the inducement requires the plaintiff to show a false statement of material fact; known or believed to be false by the person making it; an intent to induce the other party to act; action by the other party in reliance on the statement's truth; and damage resulting from the reliance. *See Hoseman v. Weinschneider*, 322 F.3d 468, 476 (7th Cir. 2003). Mazak argues that Count 1 is barred by what it refers to

---

[1] Further details regarding alleged pre-contractual misrepresentations are set out in paragraphs 17 through 19 of the amended complaint.

as "several non-reliance provisions" in the parties' written agreement, which Mazak

contends defeats a claimed requirement to show "justifiable reliance." Def.'s Mem. at 6.

The alleged contract is a "sales order" document on a Mazak form. On the front

it says that Harbor Pipe's order of the laser and Mazak's acceptance of the order are

conditioned upon Harbor Pipe's acceptance of the terms and conditions on the back of

the sales order. Mazak cites the following terms on the back of the order form. (The

Court has reduced the size of typeface as much as it could to make it closer to the

actual typeface, but what appears below is still *way* larger. The Court has also

attempted to approximate the margins on the actual contract.):

8. SHIPMENT AND PRODUCTION ESTIMATES. The shipping date is estimated upon the basis of immediate receipt by MAZAK of BUYER's acceptance of the Agreement or of MAZAK's acceptance of BUYER's purchase order and all information required to be furnished by BUYER. MAZAK shall, in good faith, endeavor to ship by the estimated shipping date but reserves the right to vary such date free of any liability to BUYER, notwithstanding any commitment or representation to the contrary. Notwithstanding any provisions by MAZAK to the contrary, MAZAK shall not be responsible or liable for any loss or damage whatsoever incurred by BUYER, including loss of income, profits, incidental, special or consequential damages resulting from MAZAK's delayed performance in shipment and/or delivery of the Products for any reason whatsoever. Production data, where given, is estimated only based upon the Products being maintained and operated under normal working conditions with competent, trained operators and maintenance personnel and upon MAZAK's analysis and understanding of the limits of accuracy, machinability and stability of materials, amount of materials to be removed, suitability of designated locating points and handling facilities provided. PRODUCTION ESTIMATES ARE APPROXIMATIONS AND ARE NOT GUARANTEED OR WARRANTED unless otherwise expressly provided in the Agreement. Unless expressly provided by this Agreement, MAZAK makes no warranties or representations regarding part[2] accuracies, which are the responsibility of BUYER.

9. PHOTOGRAPHS. Photographs, illustrations, brochures, manuals or advertising materials represent in general the Products offered, but are not binding in detail. Only written detailed specifications shall be binding.

10. WEIGHTS AND SPECIFICATIONS. All weights, measurements and powers given by MAAK are estimate stated as correctly as practicable. Any minor deviations shall not invalidate the sale of the Products or entitle BUYER to any price adjustment. Only the written detailed specifications shall be binding.

. . .

14. LIMITED WARRANTY; REPAIR/REPLACEMENT REMEDY. MAZAK warrants Part purchases installed by Mazak or Authorized Service Affiliates for a period of 90 days. MAZAK will repair or, if determined appropriate by MAZAK, replace any Part which is (i) determined by MAZAK to be defective and (ii) is returned within said 90 day period by MAZAK at its factory at 2725 Galvin Court, Elgin, Illinois, or such other place as MAZAK may designate in writing, with all transportation charges prepared by BUYER. MAZAK's repair/replacement costs are limited only to repair or replacement (at MAZAK's option) at MEZAK's designated location. Return of any repaired or replaced part to BUYER shall be at BUYER's risk and expense. This repair/replacement remedy is also conditioned upon BUYER furnishing satisfactory evidence that the Part alleged to be defective has been properly maintained and correctly operated under normal conditions with competent supervision and within the operating limits for which such Part is offered and sold. This remedy shall not apply to any Part that has been subjected to misuse, abuse, neglect, or improper storage, handling, maintenance, or operation. BUYER shall be solely responsible for proper training of all persons operating, maintaining or programming the Product which [sic] the Part is used. Should the services of a field service technician be required ,MAZAK shall make every reasonable effort to send a technician as soon as practicable. Without liability, MAZAK shall have the right to withhold repair or replacement service on any Product in the event that BUYER's accounts with MAZAK are not current. MAZAK'S WARRANTY HEREIN IS IN LIEU OF AND EXCLUDE ALL OTHER WARRANTIES OF MAZAK (COLLECTIVELY "MANUFACTURING AND SELLING PARTIES"), WHETHR EXPRESS, IMPLIED, STATUTORY, OR OTHERWISE CREATED UNDER APPLICABLE LAW INCLUDING, BUT NOT LIMITED TO, ANY WARRANTY OF

---

[2] This word appears to be "part," but the print is very small and it's a bit blurred, so the Court cannot tell for sure.

3

MECHANTABILITY AND ANY WARRANTY FOR FITNESS FOR A PARTICULAR PURPOSE OR USE.  IN NO EVENT SHALL MAZAK OR THE MANUFACTURING AND SELLING PARTIES BE LIABLE FOR SPECIAL, INCIDENTAL, CONSEQUENTIAL OR PUNITIVE DAMAGES, INCLUDING LOSS OF PROFITS, LOST SALES OR LOSS OF USE OF ANY PRODUCT WHETHER OR NOT CAUSED BY OR RESULTING FROM THE NEGLIGENCE OF THE SELLER AND/OR THE MANUFACTURING AND SELLING PARTIES.  IN ADDITION, THIS WARRANTY SHALL NOT APPLY TO ANY PRODUCTS OR PORTIONS THEREOF WHICH HAVE BEEN SUBJECTED TO ABUSE, MISUSE, UNINTENDED USE, IMPROPER STORAGE AND TO PRODUCTS WHICH HAVE BEEN TAMPERED WITH, ALTERED, MODIFIED, OR REWORKED BY ANYONE NOT APPROVED BY MAZAK.  EXCEPT AS OTHERWISE SPECIFICALLY PROVIDED IN THIS SECTION 13 [sic], BUYER'S SOLE AND EXCLUSIVE REMEDIES UNDER THIS WARRANTY SHALL BE LIMITED, AT THE SELLER'S EXCLUSIVE DISCRETION TO (1) REPLACEMENT OR REPAIR OF ANY DEFECTIVE PRODUCTS OR PART THEREOF; OR (2) RETURN OF THE PURCHASE PRICE PAID IN EXCHANGE FOR RETURN OF THE PRODUCTS.  No agent, employee or representative of MAZAK has the authority to bind MAZAK to any affirmation, representation, or warranty concerning the Products sold hereunder.  The sole purpose of the stipulated exclusive remedy provided for herein shall be to provide BUYER with repair or replacement of defective Parts in the manner provided for herein.  Such remedy shall not be deemed to have failed of its essential purpose so long as MAZAK is willing and able to repair or replace defective Parks in the prescribed manner.  Any claim or action by BUYER arising out of or in connection [sic] this Agreement or the Part, whether in contract, tort or otherwise, must be commenced within 90 days after the cause of action has accrued or be barred.

Am. Compl. Ex. 1 at 2.

Paragraph 14, in particular, takes up only *13 lines* on the actual document, not 31 as it appears here.  The actual size of the typeface can't even be reproduced in the text of this Order, because the smallest typeface that Microsoft Word will permit in the version the Court has is 8 point, whereas the actual typeface appears to be something like 6 point or even smaller.  The actual size of paragraph 14 (if one were to print out the present page on 8.5 inch by 11-inch paper) is closer to the following screenshot:



The provisions cited by Mazak do not require dismissal of Harbor Pipe's fraudulent inducement claim for failure to state a claim.  First is paragraph 8.  That paragraph addresses two general issues.  The first, involving delays in shipment, is not at issue in Harbor Pipe's fraud claim.  The second says that "production data" and "production estimates" provided by Mazak are approximations.  But it's not apparent to the Court—at least on the present record—that "production data" or estimates are

what's at issue here. And that aside, a contractual provision saying that these are "approximations" doesn't by its terms eliminate the buyer's ability to rely on them.

Next, paragraph 9 is entitled "PHOTOGRAPHS," which don't appear to be part of Harbor Pipe's claim. Nor does Harbor Pipe claim to rely on "manuals" or "advertising materials." Harbor Pipe does appear to rely on what it calls "cutting charts," but the Court can't say that these fall within paragraph 9's listing of "[p]hotographs, illustrations, brochures, manuals or advertising materials." And in any event, paragraph 9 says that "written detailed specifications" *are* binding, and giving the complaint the liberal reading required at this stage, a reasonable factfinder could determine that's what Harbor Pipe was given. The same language appears in paragraph 10, which in any event doesn't preclude reliance but rather just says that weights, measurements, and powers "are estimates stated as correctly as possible." None of these terms are fairly characterized, at least for purposes of a motion to dismiss, as precluding reliance on each and every one of the misrepresentations alleged by Harbor Pipe.

The last term cited by Mazak perhaps comes closer; it's the sentence in the "LIMITED WARRANTY" paragraph (paragraph 14) that reads, "No agent, employee or representative of MAZAK has the authority to bind MAZAK to any affirmation, representation, or warranty concerning the Products sold hereunder." This term may well preclude reliance by Harbor Pipe on some or all of the claimed oral representations by Mazak representatives. But a contract must be read as a whole, *see, e .g., Interim Health Care of N. Ill., Inc. v. Interim Health Care, Inc*., 225 F.3d 876, 879 (7th Cir. 2000), and paragraphs 9 and 10, just discussed, appear to entitle Harbor Pipe to rely on "written detailed specifications" from Mazak. On the present record the Court cannot

say that nothing within that category is involved.

Mazak also argues that Harbor Pipe's fraudulent inducement claim is barred by the proposition that "[a] party who could have discovered the fraud by reading the contract, and in fact had an opportunity to do so, cannot later be heard to complain that the contractual terms bind her." *Regensburger v. China Adoption Consultants, Ltd.*, 138 F.3d 1201, 1207 (7th Cir. 1998). The Court sees this largely as a repackaging of Mazak's contractual non-reliance clause arguments: the contractual terms Mazak contends preclude reliance by Harbor Pipe are the same terms the Court has just addressed. *See* Def.'s Mem. In Support of Mot. to Dismiss at 9 (referring to the "No Representation Provisions in the Contracts"). The Court overrules the argument for the reasons discussed above, and also because any issue of justifiable reliance is likely to be a question of fact.

For these reasons, the Court declines to dismiss Harbor Pipe's fraudulent inducement claim.

## 2. Count 2 – negligent misrepresentation

Count 2, a claim for negligent misrepresentation, is barred in its current form by Illinois' "economic loss" doctrine, under which purely economic damages typically cannot be obtained in an action for negligence. *See generally Moorman Mfg. Co. v. Nat'l Tank Co.*, 91 Ill. 2d 69, 435 N.E.2d 443 (1982). Harbor Pipe essentially concedes this. *See* Pl.'s Resp. to Def.'s Mot. to Dismiss at 13.

## 3. Counts 3 and 4 – breach of implied warranties

Counts 3 and 4 are claims for, respectively, breach of an implied warranty of merchantability and breach of an implied warranty of fitness for a particular purpose.

Paragraph 14 of the contract expressly disclaims any implied warranties. Harbor Pipe's primary argument in opposition to Mazak's motion to dismiss the implied warranty claims (Count 3 and 4) is that the disclaimer is buried within the contract and is insufficiently prominent.

Under the Illinois version of the Uniform Commercial Code, any exclusion of an implied warranty of merchantability or fitness must be "conspicuous." 810 ILCS 5/2-316(2). "Conspicuous" is defined to mean a term "so written, displayed, or presented that a reasonable person again which it is to operate ought to have noticed it." *Id.* 1-201(10). A term is "conspicuous" if it includes "a heading in capitals equal to or greater in size than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same or lesser size" and "language in the body . . . in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from surrounding text of the same size by symbols or other marks that call attention to the language." *Id.*

The Court is not prepared to say, on a motion to dismiss for failure to state a claim, that the implied warranty disclaimer is "conspicuous" *as a matter of law*. It's in all capital letters and in a paragraph entitled "LIMITED WARRANTY," and some cases rely on such factors to make a determination of conspicuousness. *See, e.g., Shurland v. Bacci Cafe & Pizzeria on Ogden, Inc.*, No. 08 C 2259, 2010 WL 3835874, at *6–7 (N.D. Ill. Sept. 24, 2010). But conspicuousness as defined in the UCC requires a comparison to the rest of the contract, and there's a *lot* on the "terms and conditions" page that's in all capital letters: specifically, paragraph 2 in its entirety; about half of the "GOVERNING LAW, JURISDICTION, VENUE, and WAIVER" paragraph (paragraph

7

21); the entirety of the "ARBITRATION OPTION" paragraph (paragraph 22); the first half of the final sentence of paragraph 8; every paragraph heading; and every mention of "BUYER" and "MAZAK." This, in combination with the *extremely* small typeface and the fact that the disclaimer is in the middle of a very bulky paragraph that also addresses several other points, renders it inappropriate in the Court's view to dismiss the warranty claims on this basis on a motion under Rule 12(b)(6).

The Court overrules, however, Harbor Pipe's other argument regarding the warranty disclaimer, specifically its contention that the disclaimer should be disregarded because doing so would undermine the purpose of the contract. Acceptance of this argument would be tantamount to saying that implied warranties can't be disclaimed. That's not the law; the UCC specifically permits such disclaimers, so long as they meet the "conspicuousness" requirement.

**4.    Request to strike jury demand**

Last is Mazak's motion to strike Harbor Pipe's jury demand based on a contractual waiver of the right to a jury trial. The case is at a very early stage, and no trial date has been set. This issue is more appropriately dealt with at a later date. The request is denied without prejudice to renewal.

**Conclusion**

For the reasons stated above, the Court dismisses Count 2 of plaintiff's amended complaint but otherwise denies defendant's motion to dismiss [dkt. no. 62]. Defendant's request to strike plaintiff's jury demand is denied without prejudice to renewal.

Date:  November 21, 2023

_____
MATTHEW F. KENNELLY
United States District Judge